UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEON EUGENE MORRIS,

    Plaintiff,

    v.

MCBRIDE, et al.,

    Defendants.

Case No. 14-cv-05269-WHO (PR)

**ORDER DISMISSING THE COMPLAINT WITH LEAVE TO AMEND**

## INTRODUCTION

Plaintiff Leon Morris claims that his former jailors at Salinas Valley State Prison violated his constitutional rights in numerous instances from 2005 through 2007. This is the fourth lawsuit Morris has filed against staff at Salinas Valley while his actions have been assigned to me.[1]

The current complaint, which was filed under 42 U.S.C. § 1983, is now before the Court for review pursuant to 28 U.S.C. § 1915A(a). His July 2005 claim of retaliation may go forward if Morris cures deficiencies in his allegations in an amended complaint.

---

[1] The other three are *Morris v. Travis*, No. 10-4010, *Morris v. Petersen*, No. 12-2480, and *Morris v. Travis*, No. 14-5134. The complaint in the instant action closely matches the complaint filed in No. 12-2480.

# DISCUSSION

## A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1),(2). Pro se pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Furthermore, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Under Federal Rule of Civil Procedure 20, persons may be joined in one action as defendants only if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

2

**B.     Legal Claims**

Morris raises 20 claims against over 20 defendants, all employees of Salinas Valley State Prison.  He alleges that that **(1)** twice in June 2005, correctional officers T. Robinson and M. Torres "tore up" his cell at the orders of Lt. Biaggini (*id.* at 3A); **(2)** from June 2005 to June 2006, S. Espey, J. Fajardo, Torres, T. Robinson, D. Perez, Torres, D. Crawford, A. Hernandez, M. Lopez, O. Ponce, R. Sanchez, Peterson, McBride, Luna, Sullivan, Kessler and Locke repeatedly withheld meals, or served incomplete ones, as acts of retaliation, but he has alleged specific facts against only J. Gonzalez and Espey for their acts in January 2006 (*id.* at 3I-3J), **(3)** twice in July 2005, T. Robinson "ramshacked" his cell in retaliation for going on a hunger strike (*id.* at 3A); **(4)** several times in August 2005, T. Robinson, M. Torres, J. Fajardo searched his cell without justification (*id.*); **(5)** in August 2005, T. Robinson placed a shower matt in front of Morris's cell, over which A. Fernandez and J. Brewen forced Morris to trip and injure himself, an act of retaliation (*id.* at 3B-3C); **(6)** in August 2005, T. Robinson and J. Fajardo "ramshacked" his cell and removed legal materials while J. Perez failed to intervene (*id.* at 3G); **(7)** also in August 2005, T. Robinson, J. Fajardo, S. Espey, and D. Perez removed legal materials from his cell while J. Perez failed to intervene (*id.*); **(8)** twice in September 2005, T. Robinson searched his cell without justification (*id.* at 3A); **(9)** twice in September 2005, T. Robinson, M. Torres, and J. Farjardo searched his cell without justification (*id.*); **(10)** in September 2005, in retaliation for filing a grievance, S. Espey refused to serve Morris his religious meal and threw a peanut butter packet at Morris, who suffered a laceration when it hit him (*id.* at 3C); **(11)** in September 2005 Registered Nurse William, without any authority, terminated his prescribed pain medications in an act of retaliation (*id.* at 3F); **(12)** in October 2005, T. Tran refused to serve him his customary religious meal, after which Sgt. Petersen pepper-sprayed him and waited 45 minutes before calling medical help (*id.* at 3C-3D); **(13)** his cell was never properly decontaminated after the October 2005 pepper-spray attack (*id.* at 3D); **(14)** in October 2005, Roque failed to accommodate his medical condition in an act of retaliation (*id.* at 3I); **(15)** in December 2005, C. Jones,

3

1  R. Sanchez, J. Fajardo, Arubias, M. Ortiz, and Peterson stole his legal mail and his
2  confidential medical records in an act of retaliation (*id.* at 3H); **(16)** in March 2006, Sgt.
3  Sullivan and Espey failed to accommodate his medical condition (*id.* at 3I); **(17)** in May
4  2006, prison law librarians McDonald and Powell retaliated against him by failing to
5  provide him with requested legal materials, which hindered Morris's access to the courts
6  (Compl. at 3E-3F); **(18)** in August 2006, J. Rodriguez used excessive force against him in
7  an act of retaliation; Morris further claims that S. Celaya and (her husband) Lt. Celaya
8  planned the attack with Rodriguez but neither were not present during the actual incident
9  (*id.* at 3D-3E); **(19)** in June 2006, Beatty failed to give Morris a proper mattress in an act
10 of retaliation for filing a grievance (*id.* at 3H); and **(20)** in August 2007, M. Zornes threw
11 out Morris's religious and legal books as an act of retaliation (*id.* at 3L).

12  Morris's claims, involving over 20 defendants committing different acts (denial of
13 access to the courts, taking property and legal materials, deliberate indifference, serving
14 bad (or no) food) at different times over three years, are unrelated by fact or law.  They run
15 afoul of Federal Rule of Civil Procedure 20.

16  Morris attempts to link these disparate events by alleging that they are acts of
17 retaliation by the Salinas Valley correctional officers (whom he collectively calls the
18 "Greenwall Gang") who dislike Morris because he files inmate grievances against them.
19 He cites as proof of this plan of retaliation conversations he overheard among correctional
20 officers on April 6, 2006 (Compl. at 3K), and some direct admissions by officers that they
21 were acting out of retaliation for his filing of grievances and lawsuits against them
22 This is insufficient to justify the inclusion of these disparate claims in one action.  The
23 April 2006 conversation contains both general and specific threats of retaliation, but fails
24 to link the over 20 defendants and the 20 claims together.  As for the alleged admissions,
25 each one might indicate that the specific act related to that admission was retaliatory, but in
26 no way links these 20 disparate claims together.

27  Claim 1, though the earliest in time, may not proceed because Morris has not stated
28 a claim for retaliation.  "Within the prison context, a viable claim of First Amendment

retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Morris has not shown that refusing to take a cellmate is constitutionally protected conduct, such as denial of access to the courts or filing grievances against prison officials. A prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997). Because Morris has not stated a claim under these standards, Claim 1 is DISMISSED without leave to amend.

Claim 3, the next in time,[2] can go forward if Morris cures his failure to allege harm. In that claim, he alleges that twice in July 2005, T. Robinson "ramshacked" his cell in retaliation for going on a hunger strike (Compl. at 3A). Unlike refusing to take a cellmate, going on a hunger strike may well meet the standard for exercising the constitutional right of free speech. But a prisoner must at least allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect. *Rhodes*, 408 F.3d at 567-68 n.11; *see Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner alleged injury by claiming he had to quit his law library job in the face of repeated threats by defendants to transfer him because of his complaints about the administration of the library); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of harm). The harm or injury need not be "more tangible than a chilling effect on First Amendment rights." *Gomez*, 255 F.3d at 1127. This is an easily amendable defect and Morris will be given an opportunity to cure this deficiency in an amended complaint. The remaining claims are DISMISSED without

---

[2] Claim 2 is not earliest in time because Morris provided facts sufficient to state a claim only for an incident in 2006.

prejudice to Morris bringing them in separate actions, either in state or federal court.

**Morris shall file an amended complaint on or before May 15, 2015.** The first amended complaint must include the caption and civil case number used in this order (14-5269 WHO (PR)) and the words FIRST AMENDED COMPLAINT on the first page. Because an amended complaint completely replaces the previous complaints, Morris must include in his first amended complaint all the claims he wishes to present and all of the defendants he wishes to sue. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). He may not incorporate material from the prior complaint by reference. Failure to file an amended complaint in accordance with this order will result in dismissal of this action without further notice to plaintiff. The Court reminds Morris that the amended complaint must be limited to a discussion of Claim 3 and should allege how he suffered harm. If he realleges any other claims, they will be summarily dismissed.

It is Morris's responsibility to prosecute this case. He must keep the Court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address." He must comply with the Court's orders in a timely fashion or ask for an extension of time to do so. Failure to comply may result in the dismissal of this action pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

**Dated:** April 3, 2015



WILLIAM H. ORRICK
United States District Judge